# SIDNEY GERSTEIN *v.* STATE OF MARYLAND

[No. 41, September Term, 1970.]

*Decided October 29, 1970.*

324

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, THOMPSON and POWERS, JJ.

*John D. Hackett* and *David S. Harris,* with whom was *A. David Gomborov* on the brief, for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph Kiel, Fred K. Grant,* and *Joseph Harlan, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The threnody of Sidney Gerstein makes clear his dissatisfaction with the judgments rendered against him at his jury trial in the Criminal Court of Baltimore [1] but for

1. The jury found appellant guilty of offenses as follows:
    Indictment 7951/7955—two counts of obtaining telephone service with intent to cheat and defraud;
    Indictment 7952/7956—knowingly possessing an instrument designed with the intent and for the pur-

the most part leaves clouded the reasons why he feels they should be reversed. When his prolix brief is alembicated there remain three contentions presented by specific questions and a gaggle of miscellaneous claims more or less indicated under the general question, "Did the trial court commit reversible error?" We consider the three contentions under the specific questions and such of the claims under the general question as are set out with sufficient specificity as to warrant attention.

We first observe that we have been mindful, as appellant "implores" us, of "the totality of the trial atmosphere" in our "review of assigned error." We have reviewed the record and find that the trial was conducted under the "constraints of the rules of procedure and evidence" by an impartial judge with due regard for the protection of appellant's "rights, dignity and personal integrity." We find no substance in appellant's general indictment of the proceedings against him.

*The Lack of a Preliminary Hearing*

Appellant moved prior to trial to dismiss the indictments against him on the ground that he had not received a preliminary hearing to which he was entitled as a matter of right under Code, Art. 26, §§ 107-129. He also moved to stay the proceedings until a preliminary hearing had been held. He was arrested on 13 December 1968, and according to his brief, taken in an ambulance to the hospital, treated for a head injury and then went home

---

pose of concealing from the telephone company and law enforcement agencies charged with enforcing Art. 27, § 557A the existence or place of origin of communications by telephone;

Indictment 7954/7958—conspiring with persons unknown to violate the lottery laws;

Indictment 3209—selling a lottery ticket, 1st count; keeping a room located at 2300 Barclay Street for the purpose of selling lottery tickets, 2nd count; possession of lottery paraphernalia.

Warned by an addendum to indictment 3209 that the State intended to prosecute him for that current offense as a subsequent offender, he elected to be tried separately by the court on that issue and after his conviction under indictment 3209 he was found to be a subsequent offender.

having been released on bail. On 23 December he was presented. Capias was issued and returned cepi bail. Indictments were returned on 9 January 1969.

Maryland has no general law requiring a preliminary hearing and we have held that an accused does not have a constitutional right to one. *Clemons v. State,* 9 Md. App. 127; *Graham v. State,* 6 Md. App. 458. We find nothing in *Coleman v. State of Alabama,* 90 S. Ct. 1999 to indicate that a preliminary hearing is constitutionally mandated. At the common law when an accused was brought before the magistrate, it became the magistrate's duty to conduct a hearing and, after due investigation, to discharge, bail or commit him. If the magistrate determined that there was probable cause to suppose the accused guilty, he was held for action of the grand jury, commitments for trial being certified to the court having jurisdiction to try the offense charged. See Hochheimer's *Criminal Law,* 1st Ed., §§ 105-108, pp. 75-76. Code, Art. 26, §§ 107-129 concern the Municipal Court of Baltimore. It is the duty of every judge sitting in the criminal division thereof before proceeding to hear, try and determine any charges within the jurisdiction of the court, to inform the accused of his right to a jury trial. If he prays a jury trial "the judge shall thereupon determine whether probable cause exists for believing that said person is guilty" and if it be so determined, the judge shall forthwith commit him or hold him for bail for trial in the Criminal Court of Baltimore. If the judge determines that probable cause does not exist, the charges shall be dismissed. The same procedure is followed when in such cases the State may and does pray a jury trial. § 111 (a) and (b). When the accused is charged with an offense beyond the jurisdiction of the Municipal Court of Baltimore City the procedure to be followed is prescribed by § 115:

> "Whenever any person shall be arrested in the City of Baltimore upon any criminal charge, or for the violation of any law of this State, or of any ordinance of the mayor or city council of Baltimore [other than motor vehicle charges] it

shall be the duty of the police officer or constable making such arrest, or in whose custody the person arrested may be, to take such person before a judge of the criminal division of the Municipal Court of Baltimore City, and if any offense charged against the person arrested is beyond the jurisdiction of the court, the judge of the criminal division shall sit as a committing magistrate with the same powers and duties as were invested in and imposed upon the justices of the peace assigned to the station houses of Baltimore City on the day preceding the effective date of this subtitle, provided that all persons charged with murder, manslaughter, or manslaughter by automobile shall be taken by the police officer making the arrest, or in whose custody the person arrested may be, before a judge of the criminal division of the Municipal Court sitting at that location of the criminal division [except the housing part] which is closest to the office of the State's Attorney of Baltimore."

Chapter 616, Acts 1961, which enacted the law codified as Art. 26, § 115, at the same time repealed § 428 of the Charter and Public Local Laws of Baltimore City (1949 Ed.) as amended by Ch. 458, Acts 1951. Section 115 in its provision that the Municipal Court Judge would sit as a committing magistrate "with the same powers and duties as were vested in and imposed upon the justices of the peace assigned to the station houses of Baltimore City on the day preceding the effective date of this subtitle", was referring to § 428 of the Local Laws of Baltimore City. As amended it was in substance the same as § 115 except that the arrestee was to be taken before a justice of the peace. The justice of the peace was directed "to take jurisdiction of the case and dispose of such case promptly." The justice of the peace disposed of such cases by trying those in which he had jurisdiction, except when a jury trial was prayed, in which event he conducted a

preliminary hearing, and as to those cases in which he did not have jurisdiction he conducted a preliminary hearing under the common law authority.[2] The dictates of § 115, however, must be considered in the light of § 109 (c) (3). It reads:

> "The powers of the grand jury of Baltimore City as the same existed on the day immediately preceding the first Monday in May 1961, to present any person for trial in the Criminal Court of Baltimore City as the result of any investigation initiated on its own motion, or that of any of its predecessors, shall not in any way be limited, abridged, or circumscribed by this section [prescribing the jurisdiction of the Municipal Court]. Any such presentment by the grand jury of Baltimore City shall be conclusively presumed to have been made in accordance with the provisions of this subsection."

It is clear that if the grand jury of Baltimore City presents an accused who has not been taken before a judge of the Municipal Court and either tried on a charge under the jurisdiction of that Court or, when that court does not have jurisdiction of the offense, held or discharged after a preliminary hearing, it is *conclusively presumed* that the presentment was made by the grand jury as the result of an investigation initiated on its own motion. As the right to do so may not be "limited, abridged, or circumscribed" by the Municipal Court Act, the action of the grand jury is superior to any statutory right to a preliminary hearing provided by § 115.

Here appellant lost any right he may have had under § 115 to a preliminary hearing on the charges against him when the grand jury of Baltimore City presented him on the charges. Therefore, the lower court did not

---

2. Rule XVIII of Rules of the Municipal Court of Baltimore City prescribes how all preliminary hearings are to be conducted. See *Code of Public Local Laws of Baltimore City*, Everstine (1969), pp. 295-296.

err in denying the motion to dismiss the indictments on the ground he had not had a preliminary hearing, nor did it err in denying the motion to stay the proceedings until a preliminary hearing was held.

*The Motion for a Mistrial*

During the trial there was a question whether a police officer would have been able to recognize appellant's voice. Laying a foundation that the officer in the past had an opportunity to talk with appellant and to hear his voice the officer was asked by the State the total times he had conversed with appellant and the length of the conversations. The officer, answering, said, "Well in 1962 I made a raid there." Defense counsel objected and moved that it be stricken. The court said: "Yes, strike that, the jury will disregard reference." Appellant moved for a mistrial. The court denied the motion saying: "The jury will disregard the reference the Lieutenant just made to how he happened to be talking to the defendant but the question is how long did you talk to him on that occasion and don't repeat the occasion Lieutenant." We do not think it unreasonable to conclude that the jury could and did follow the judge's instructions to disregard the information. See *Bruton v. United States,* 391 U. S. 123, 135. The determination whether or not to grant a mistrial is within the sound discretion of the trial court. *Parker v. State,* 7 Md. App. 167; *Carroll v. State,* 3 Md. App. 50. We see no abuse of discretion here, particularly in view of the judge's prompt admonition to the jury. *Shotkosky v. State,* 8 Md. App. 492; *Baldwin v. State,* 5 Md. App. 22.

*The Alleged Assistance of the Prosecution by the Trial Court*

Appellant recognizes that the trial court may properly intervene to see that full facts on an issue are brought out in an attempt to assure a correct decision. *Jefferies v. State,* 5 Md. App. 630. We find the actions of which appellant complains to have been no more than that. We do not believe that appellant's charges that the court instructed the prosecutor on trial procedures, on presenta-

tion of evidence, and on rights concerning witnesses and that it interposed *sua sponte* cautions and called recesses have real substance, assuming them to be factually correct, when viewed in the frame of reference in which the particular action was taken. We do not find that they represent an abuse in the wide discretion the judge has in the conduct of a trial at which he presides. See *Plank v. Summers,* 203 Md. 552; *Stewart v. State,* 4 Md. App. 565. Rather the transcript of the proceedings reveals only the patient efforts of the trial court in the face of an aggressive defense to protect appellant's rights, to insure that only such evidence as was properly admissible would be received and to see that the full facts supporting both the position of the State and of appellant would be brought before the jury. We hold that the trial court did not improperly assist the prosecution to obtain a conviction.

## The Search Warrant

### The Claim that it is a General Warrant

The warrant commanded the search of five persons and "the entire premises 2300 Barclay Street" for lottery slips and related gambling paraphernalia. The five men were particularly described as follows:

> "a c/m/5'8", 40 years, 160 lbs, med. brown complexion, known as First man; c/m/5'10", 45 years, 180 lbs, med. brown complexion known as Second man; c/m/40 years, 5'10", 175 lbs, dark brn. complexion, known as Third man; a w/m/- 45-50 years, almost bald headed, glasses, 5'10", 215 lbs, herein known as the Fourth man; c/m/- 5'10", 170 lbs, 30 years, med. brown complexion, known as Fifth man."

The premises were described as "a two-story brick building painted red on front, gray faded on the south side of this corner building. The wood is painted red and green. The first floor formerly housed a grocery store, as is told by the sign over the first floor level, which reads Gerstein's Groceries. The front/side doors are also painted

green, wood panels cover part of the front door and windows, apparently as a result of our civil disturbance, as this business is not now operating."

We find that the warrant was not a general one within the contemplation of the constitutional and statutory prohibitions. See *Fleming v. State*, 201 Md. 145; *Webster v. State*, 6 Md. App. 163; *Salmon v. State*, 2 Md. App. 513.

### The Claim the Warrant Was Not Issued on Probable Cause

Appellant conceded in argument before us that the affidavit upon which the warrant here was issued showed probable cause for its issuance and we find it clear that it did. This ends our inquiry on the issue. It has been firmly established by and consistently followed in the opinions of the Court of Appeals and this Court that any inquiry as to whether the affidavit upon which a search warrant was based showed probable cause is confined to the affidavit alone; evidence outside the affidavit, no matter by whom produced or how, is not relevant to the inquiry. *Scarborough v. State*, 3 Md. App. 208, 211-216.

It appears that at appellant's insistence the trial court received evidence outside the affidavit on the issue of probable cause. Appellant now claims that the clearly established rule of law was thus waived by the trial court and that the validity *vel non* of the warrant must be viewed by us in the light of evidence received. The trial court had no discretion to look outside the affidavit on the issue of probable cause and could not waive the rule. We are not bound on appellate review by its action in this respect. We look only to the affidavit, and as it showed probable cause it supported the issuance of the warrant. We have no need to consider the propriety of the lower court's ruling that the evidence adduced on the issue did not show that the statements made in the affidavit were false. See *Pettiford, et al v. State*, 8 Md. App. 560.

*The Evidence Seized*

It seems that appellant objects to the admission of a device, commonly called a "cheesebox", designed to conceal the origin or destination of telephone calls, which was seized under the authority of the warrant. He contends that since it was not described in the warrant its seizure was invalid. The items which the police may reasonably seize under a constitutionally valid warrant and search are not confined to those specifically designated in the warrant if a nexus exists between the item to be seized and criminal behavior. *Crawford v. State,* 9 Md. App. 624, 627; *Anglin v. State,* 1 Md. App. 85, 88-90. We note that such nexus is automatically provided in the case of fruits and instrumentalities of crime and contraband. *Warden v. Hayden,* 387 U. S. 294, 307. The trial court could have properly found a nexus between the "cheesebox" and the criminal behavior charged. We hold there was no error in admitting the item in evidence. Other contentions as to the seizure of the evidence seem to be predicated upon the validity of the warrant and the legality of its commands. As we have found it legal these contentions fail.

*The Arrest*

. Appellant argues that his arrest was illegal even if the warrant was valid. It follows, he urges, that a search of him incident to the arrest, was not reasonable, and what was taken from him should not have been admitted in evidence. The warrant commanded the arrest upon execution of the warrant of all those persons then and there engaged in the commission of a crime. When the police entered the premises and searched under the authority of the warrant it was plain that offenses proscribed by the lottery laws were being committed in their presence. The court would not be clearly wrong in determining that appellant's being on the premises was more than mere presence and that in the circumstances, including his attempted flight, he was participating in the illegal activities. We hold that his arrest was legal. See *Salmon v. State, supra.*

## Pre-Trial Motions

On 3 February 1969 Francis S. Brocata entered his appearance as counsel for appellant and on 25 February a 30 day postponement was granted so counsel could file preliminary motions. On 31 March appellant filed a motion for bill of particulars; a motion for discovery and inspection, a motion for discovery and inspection "with respect to electronic interception and eavesdropping," and a motion for disclosure of witnesses on whose evidence the indictments were based. On 11 April the State answered the motions and on 21 April exceptions were filed to the answers on the motion for discovery and inspection and on the demand for particulars. On 14 May the motion for discovery and inspection and the motion for bill of particulars and the exceptions to the State's answers thereto were withdrawn. The motion for disclosure of witnesses was withdrawn. The motion for discovery and inspection with respect to electronic interception and eavesdropping was overruled. On 15 May pleas of not guilty were withdrawn and pleas of *nolo contendere* were submitted. Acceptance was held *sub curia*. Appellant was released on bail previously taken. On 13 November the pleas of *nolo* were withdrawn and by motion made and granted in open court the appearance of defense counsel was withdrawn. On 20 November, trial having been set for 1 December, appearance of David S. Harris was entered for appellant. Appellant was again arraigned and entered pleas of not guilty. Motion to stay proceedings was made, heard and denied. A motion to dismiss the indictments was made; the docket entries do not reflect any action thereon. On 9 December the appearance of David A. Gomborov as co-counsel to represent appellant was filed. The same day a number of other motions were filed. A motion to stay the proceedings was declared moot as having been previously overruled by the court. An affidavit for removal was made and denied. A motion to dismiss the indictment on the same ground as that made on 20 November was made and disposition held *sub curia*. A motion for bill of particulars, a motion for discovery and

334

inspection, a motion for discovery and inspection with respect to electronic interception and eavesdropping, a motion for disclosure of witnesses, all the same as previously made, were filed. The same day the State filed its answers. The case went to trial but before it did the court went on record:

"Let the record show that after the arraignment the plea and the election of jury trial, the jury was called and arrived in Court. Thereafter, I received from defense counsel a list of multigraph copies or Zerox copies of motions filed by Francis S. Brocato, who was then counsel for the defendant. These motions have remained and the name of Mr. Brocato stricken out and the name of David S. Harris substituted for Brocato's wherever Brocato's name appeared. First is a motion for discovery and inspection with respect to electronic interception or eavesdropping. The next is a motion for a bill of particulars. The next is a motion for suppression of evidence on the ground that the warrant is insufficient. The next is a motion for discovery and inspection pertaining to a myriad of records, photographs, instruments, documentary evidence. So many things that it is utterly incomprehensible to me. And the next is a motion for disclosure of witnesses. All of these motions according to my information have been submitted many, many months ago before Judge Harris and withdrawn by Mr. Brocato. They all pertain to matters of discovery except for the motion to suppress evidence which challenges the validity of a warrant which I have never seen. Certainly the motion pertaining to discovery comes much too late. The only comment I can make is that I will endeavor to do what is fair in the course of the trial, but I cannot delay this trial forever. Where counsel filed discovery motions after the jury is in Court and about to be

> selected, that is the reason it seems to me but I will do what I can at any time during recess, I will direct the State to let you inspect any electronic devices you care to look at. And if you want, you [can] have the names of the witnesses you intend to call to prove your case in chief, * * *."

It was then the State again filed the answers previously filed to the motions and it was elicited that defense counsel had been aware for weeks of the prior motions and answers and in fact had received copies of the answers previously filed. He said that the prime motion was that on suppression of the evidence on the ground of the validity of the warrant and agreed to adopt the former motions made.

Appellant now intimates that the court erred in refusing to permit new motions to be filed on the day of trial. We find no error in the circumstances. And we note that it does not appear that appellant affirmatively requested a postponement of the trial on 9 December. The motion to stay proceedings to which appellant refers in his brief was that made on the ground that a preliminary hearing had not been held.

### Sufficiency of the Evidence

Appellant does not present the sufficiency of the evidence as a specific question but refers to it in passing under a topic he calls "The Seizures", dealing primarily with the allegation of the failure to show that he had a proprietary interest in the premises raided. In any event we have no difficulty in determining that the evidence was sufficient to submit the case to the jury as to each offense of which conviction was had. Appellant's presence in the basement, his identification as a participant in the recorded receipt of lottery play, his actions in attempting to destroy the evidence at the time of the raid, his participations in the conversations overheard during the police surveillance, and the evidence recovered from his person met the test of *Williams v. State*, 5 Md. App. 450.

The court did not err in overruling motions for judgment of acquittal.

## Other Alleged Defects

We have considered the vague allegations made under the heading "Other Defects" in appellant's brief. To the extent that we are able to ascertain the points appellant desires to make, we find them to be no grounds for reversal.

*Judgments affirmed; appellant
to pay costs.*