CLARENCE EDWARD TAYLOR *v.* STATE OF
MARYLAND

[No. 543, September Term, 1972.]

*Decided April 13, 1973.*

The cause was argued before POWERS, CARTER and GILBERT, JJ.

*R. Patrick Hayman, Assigned Public Defender,* with whom was *Lionel Bennett* on the brief, for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Robert D. Horsey, State's Attorney for Somerset County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Clarence Edward Taylor was convicted in a non-jury trial of violating the gambling laws (Md. Ann. Code Art. 27, § 240) and received a six month suspended sentence and a fine of $200.00. He was placed on probation for a period of six months, during which time the fine was to be paid.

The sole question presented by this appeal is whether or not the trial judge erred in denying a motion to suppress evidence on the ground that there was no probable cause for the issuance of a search and seizure warrant. We conclude for the reasons stated *infra* that the evidence should have been suppressed. We accordingly reverse the judgment of conviction.

The record reveals that the Maryland State Police obtained a search and seizure warrant from a judge of the District Court for the search of "Brownie's Pool Hall" in Crisfield, Maryland. The affidavit upon which the warrant was issued states:

> "APPLICATION is herewith made for a Search and Seizure Warrant in that there is probable cause to believe the laws relating to the Illegal Manufacturing, Distribution and Possession with intent to Distribute Controlled Dangerous Substances, as defined in Article 27, Sections 286 and 287 of the Annotated Code of

538

Maryland, 1957 Edition as amended and revised, dealing generally with narcotics, Hallucinogenic and dangerous drugs are being violated in and upon a certain two story building situated at Fourth Street, Crisfield, Somerset County, Maryland, more particularly described as a two story, white frame building, the said building divided into two floors. The roof of said building white in color. This application is for a Search and Seizure Warrant for that portion of the building which is located on the first floor of the above mentioned building, as aforesaid, and the entrance to said building is had via a wooden door leading from the south side of said building, as aforesaid; the said building is located on the north side of Fourth Street, between Main Street and Broadway Street, Crisfield, Somerset County, Maryland. The aforesaid building is the fourth building east of Main Street and fourth building West of Broadway Street, on Fourth Street, Crisfield, Somerset County, Maryland. The aforesaid building known as Brownie's Pool Hall and operated by John Henry Brown, Crisfield, Maryland. The building further identified by a [sic] enclosed porch on the south side of same.

The name of your affiant/ is Trooper Edwin D. Horner of the Maryland State Police Narcotic Section, Christopher White, Washington, D. C.

In support of this application and the basis for probable cause your affiant/ deposes and says:

That on August 24, 1971 at approximately 12:00 AM your affiant White went to Brownie's Pool Hall, on Fourth Street, Crisfield, Somerset County, Maryland and knocked

on the back entrance. Your affiant White was greeted at the door by colored male known as George Rolley and had conversation with Rolley and asked him if he had any 'stuff?' George Rolley then advised affiant White to wait for J.B. Then affiant White observed two colored males known as Pee Wee and J.B. pass a hypodermic syringe between the two of them. Approximately 20 minutes later J.B. came outside the building and dumped a half a glass of water. The affiant White then had conversation with J.B., J.B. then told the affiant White to park on the corner of Fourth and Broadway Street, Crisfield, Maryland while he went to get his stash (meaning drugs). J.B. went to his residence and was unable to get his stash, however, he gave the affiant White a small glassine bag containing a white powder substance. The affiant White then advised J.B. he would see him tomorrow.

That the affiant White has assisted your affiant Horner and other members of the Maryland State Police Narcotic Section in many investigation [sic] involving similar cases of Controlled Dangerous Substances Laws; and as such has lead to the conviction of many of the defendants involved in these cases. That the affiant White has been involved in the investigation of approximately 100 cases of Controlled Dangerous Substances over the past six months.

That your affiant Horner has been a police officer for approximately three years, that your affiant Horner has been a member of the Maryland State Police, Vice-Narcotic Section for three months, and as such has conducted or participated in the conduct of approximately 50 investigations of Controlled Dangerous Substances violations; that your affiant Horner has attended the State of New Jersey Narcotic

School, at Sea Girt, New Jersey, and the Maryland State Police Narcotic School, Wye Mills, Maryland.

That your affiant Horner on September 8, 1971 submitted the small glassine bag containing white powder substance and it was analyzed to be Codeine Phosphate, a Controlled Dangerous Substance of Schedule II by Baltimore City PD, Chemist, R. S. Davis.

Your affiant Horner avers, that based on the information of the affiant White, as aforesaid and the affiant's knowledge and experience as a member of the Maryland State Police, Vice-Narcotic Section, there is probable cause to believe and does believe, that the laws regulating Controlled Dangerous Substances as hereinbefore cited are being violated in and upon the premises as hereinbefore described.

Your Affiant, therefore, prays that a Search and Seizure Warrant be issued authorizing him, with the necessary and proper assistance, to:

a. Enter and search the person/s, premises as completely described above.
b. Search the person/s and clothing of .... ....................., and all other person/s found in or upon said premises who may be participating in violations of the statutes hereinbefore cited;
c. Open and search any safes, boxes, bags, compartments or things in the nature thereof, found in or upon said premises or person/s [;]
d. Seize all evidence, paraphernalia and money used in or incidental to the conduct or operation of narcotic violations, found in or upon said premises, persons; and

e. Arrest all persons found in or upon said premises who may be participating in violations of the statutes hereinbefore cited.

SUBSCRIBED AND SWORN TO, this 23rd day of September, in the year of Our Lord, 1971.

S/Edwin R. Horner

Before me, a District Court Judge of the State of Maryland, in and for Somerset County, this 23rd day of September, 1971, personally appeared Edwin Horner, personally known to me or properly identified, and he made oath that the contents of the aforegoing document are true and correct.

S/Lloyd L. Simpkins

The warrant was issued thirty days after White's initial and only stated observation of Brownie's Pool Hall. It was executed on the thirty-first day after the observation. It is to be noted that the named informer, for reasons not explained in the record, did not subscribe and swear to the facts stated in the affidavit.

When the police executed the warrant on September 24, 1971, they found no evidence of narcotics, but did discover in the pockets of a coat and three jackets that were hanging in the premises slips of paper identified as lottery slips. The coat belonged to the appellant. A "policy book" and additional slips were also found in the pool hall. The appellant, who was brought to the scene of the "raid" by the State police after the search had commenced, was placed under arrest. He was discovered to have in his wallet two lottery slips. Appellant was indicted by the Grand Jury of Somerset County on four counts charging violation of Md. Ann. Code Art. 27, § 240 (bookmaking on horse races, bookmaking on other contests, receiving a bet and recording a bet). Appellant's counsel filed a timely motion to suppress the evi-

dence and submitted a "brief" in support thereof. The State answered the motion and the appellant replied thereto. On June 23, 1972, the trial court, apparently without a hearing, denied the appellant's motion. Because the appellant interposed no objection to the admission into evidence of the seized inculpatory material at the trial, the State, in oral argument before this Court, urged that the question was not properly before us inasmuch as it had not been preserved for our review. We disagree. Md. Rule 729 provides in pertinent part:

> "a. *Scope.*
>
> This rule shall be applicable whenever property is claimed in a court to have been obtained by an unlawful search or seizure even though the offense charged or threatened to be charged may not be within the exclusive jurisdiction of a court or even though the search warrant, pursuant to which the property was seized, may not have been issued by a court.
>
> \* \* \*
>
> f. *Objection Preserved on Appeal or New Trial Motion.*
>
> If such motion, petition or objection is denied or overruled, the objection of the accused to the evidence sought to be suppressed, excluded or returned shall be preserved on appeal to the appropriate appellate court or on a hearing on a motion for a new trial, even though no further objection was made to the introduction of such evidence at the trial."

In *Silbert v. State,* 10 Md. App. 56, 59, 267 A. 2d 770 (1970), it is stated in unequivocal terms that when a motion to suppress has been made, there need not be a further objection to the admission of the evidence during the trial. We said:

> "Rule 729, § f. . . . expressly preserves the question on appeal without further objection at trial."

We think the State's contention to be devoid of merit, and the law to be so clearly established as to require no further discussion.

Appellant attacks the warrant on the basis that there was no probable cause for its issuance. He asserts that the affidavit of Trooper Horner was conclusionary and lacked a showing of sufficient factual background to justify the Trooper's assertion that there was "probable cause to believe that the laws relating to . . . Controlled Dangerous Substances . . . are being violated in and upon the premises. . . ."

To determine probable cause for the issuance of a warrant, we look to the four corners of the affidavit upon which the warrant was based. If the affidavit establishes "probable cause" the warrant is valid. *Hudson v. State,* 16 Md. App. 49, 294 A. 2d 109 (1972) ; *Dawson v. State,* 11 Md. App. 694, 276 A. 2d 680 (1971) ; *Gerstein v. State,* 10 Md. App. 322, 270 A. 2d 331 (1970), *cert. denied* 402 U. S. 1009 (1971) ; *Scarborough v. State,* 3 Md. App. 208, 238 A. 2d 297 (1968).

In the instant case, the affidavit indicated that the informer went to Brownie's Pool Hall and from the doorway thereof observed a hypodermic syringe pass between two persons, neither of these being the owner or the appellant. The informer sought to make a buy from "J.B." but was told that he, "J.B.," would have to go and get his "stash." "J.B." left the premises and met the informer at another location where he gave to the informer a glassine bag containing codeine phosphate.

The sole observation by the informant of two patrons of Brownie's Pool Hall passing a hypodermic syringe between them does not, in and of itself, give rise to a rational inference that narcotics were being kept or stored in the premises any more than a single observation of a lottery slip being passed between two customers of a restaurant would give rise to a rational inference that an illegal gambling operation was being conducted in that restaurant. In this case, the probable cause for

the issuance of the warrant is non-existent, particularly in view of the fact that the "buy" of the proscribed narcotics occurred away from the premises. There was nothing in the affidavit that would, in our opinion, justify a fair and impartial magistrate's concluding that probable cause existed for the issuance of the warrant. "Probable cause" has been defined as a non-technical conception of a reasonable ground for belief of guilt requiring less evidence for such belief than would justify conviction but more evidence than mere suspicion. *Carroll v. United States*, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790 (1925) ; *Cuffia v. State*, 14 Md. App. 521, 287 A. 2d 319 (1972) ; *Cleveland v. State*, 12 Md. App. 712, 280 A. 2d 520 (1971). We think it patent that in the instant case there was nothing more than "mere suspicion" that trafficking in narcotics was occurring in Brownie's Pool Hall.

Inasmuch as we hold that there was no probable cause for the issuance of the warrant for the reasons herein stated, we need not consider the question of the staleness of the information embodied in the affidavit.

*Judgment reversed.*