# WILLIAM DeWAYNE PETERSON *v.* STATE OF MARYLAND

[No. 32, September Term, 1977.]

*Decided November 1, 1977.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Mark Colvin, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

William DeWayne Peterson does not suggest that there never was probable cause to believe that his apartment was used in connection with illicit traffic in narcotic drugs. He urges, however, that the facts and circumstances constituting probable cause that it was so used, as set out in the affidavit for the warrant commanding the search of his apartment, were so remote from the date of the affidavit as to render it improbable that the law was being violated at the time the warrant was issued. Whether the probable cause supporting the warrant was "stale" is the sole issue presented on this appeal. The Court of Special Appeals held that it was not. *Peterson v. State,* No. 590, September Term, 1976, decided 25 January 1977, unreported. We agree.

## I

Peterson was found guilty by a jury in the Circuit Court for Prince George's County of committing six offenses relating to drugs. Under an addendum to the indictment he was found to be a second offender. On direct appeal, the Court of Special Appeals affirmed the judgments as to the substantive offenses but reversed the finding under the addendum proceedings. It vacated the sentences and remanded the case for further proceedings.[1] *Peterson v. State, supra.* We certified the case to us for review.

The first seven counts of a twelve count indictment under which Peterson was charged were based upon evidence seized on 30 December 1974 upon a search of his apartment, No. 202 at 5286 Marlboro Pike, Hillside, Prince George's County, Maryland, on the authority of a warrant issued 29 December 1974. He was convicted of the charges presented by three of these first seven counts: the first (possession of heroin with an intent to distribute), the third (possession of marihuana), and the fourth (possession of controlled paraphernalia). Peterson moved to suppress this evidence. He contended, *inter alia,* that the evidence was illegally obtained by an unreasonable search and seizure; the search and seizure were unreasonable because the warrant was invalid; the warrant was invalid because the probable cause on which it was issued was deficient; the probable cause was deficient because the facts to establish it set out in the affidavit were "stale," that is, so remote from the date of the affidavit as to render it improbable that the alleged violation of the law was extant at the time the application for the warrant was made.[2]

---

1. The State accepts the judgment of the Court of Special Appeals, requesting that it be affirmed.

2. Two other warrants relating to Peterson were issued on 29 December 1974. One commanded the search of his person and the other the search of a 1973 Cadillac driven by him. Counts eight through twelve of the indictment were based on evidence obtained when Peterson was stopped on 31 December 1974 driving a 1973 Oldsmobile registered in the name of a Charles Thomas shortly after leaving the residence of a Bobby Harris at 7913 Cawker Avenue. The contraband was found in the trunk of the Oldsmobile. No contraband was found upon a search of the Cadillac. With respect to the evidence seized on 31 December, Peterson was convicted of

## II

The Fourth Amendment to the Constitution of the United States, applicable to the states through the Due Process Clause of the Fourteenth Amendment, *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684 (1961), provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The broad terms of the "unreasonable searches and seizures" clause must be viewed in light of the more specific dictates of the warrant clause. *See United States v. United States District Court,* 407 U. S. 297, 315, 92 S. Ct. 2125 (1972); *Katz v. United States,* 389 U. S. 347, 357, 88 S. Ct. 507 (1967); *Camara v. Municipal Court,* 387 U. S. 523, 528, 87 S. Ct. 1727 (1967). Thus, except in certain carefully defined classes of cases, a search of private property without valid consent is "unreasonable" unless it has been authorized by a valid search warrant. *Almeida-Sanchez v. United States,* 413 U. S. 266, 93 S. Ct. 2535 (1973); *Stoner v. California,* 376 U. S. 483, 486, 84 S. Ct. 889 (1964); *Camara v. Municipal Court, supra,* at 528-529; *United States v. Jeffers,* 342 U. S. 48, 51, 72 S. Ct. 93 (1951); *Agnello v. United States,* 269 U. S. 20, 30, 46 S. Ct. 4 (1925). *See South Dakota v. Opperman,* 428 U. S. 364, 381-382, 96 S. Ct. 3092 (1976), Powell, J. concurring.

---

the charges presented in count eight (possession of heroin with intent to distribute), in count ten (possession of a controlled dangerous substance), and in count eleven (possession of controlled paraphernalia).

Peterson urges that "evidence of the presence of narcotics in his apartment on December 30 unquestionably prejudiced [him] in his attempt to convince the jury of his innocence as to Counts 8, 10 and 11." He concludes: "Under these circumstances, the lower court's error in denying the motion to suppress the evidence seized from the apartment was clearly not harmless beyond a reasonable doubt as to Counts 8, 10 and 11." Thus, he would have us reverse the convictions as to all counts. Brief for appellant at 14 n. 6. As we find no error in the denial of the motion to suppress the evidence seized from the apartment, the point is not reached.

Under the Fourth Amendment a search warrant is not valid unless there is probable cause for its issuance as shown by the required affidavit. *See also* Declaration of Rights to the Constitution of Maryland, Art. 26; Maryland Code (1957, 1976 Repl. Vol.) Art. 27, § 551. We discussed what probable cause involved in *State v. Edwards,* 266 Md. 515, 295 A. 2d 465 (1972):

> "The finding of 'probable cause,' while demanding more than mere suspicion, *Draper v. U.S.,* 358 U. S. 307, 311-12, 79 S. Ct. 329, 3 L.Ed.2d 327 (1959), requires less evidence than would justify conviction, *Locke v. U.S.,* 7 Cranch 339, 348, 3 L. Ed. 364 (1813), and less than would justify an officer in making a search without a warrant, *Johnson v. U.S.,* 333 U. S. 10, 15, 68 S. Ct. 367, 92 L. Ed. 436 (1948). The evidence itself need not be legally competent in a criminal trial, *Draper v. U.S., supra,* 358 U. S. at 311, and may in fact be hearsay, *Jones v. U.S.,* 362 U. S. 257, 272, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960), so long as the judicial officer issuing the warrant is informed of some underlying circumstances supporting the affiant's conclusions and his belief that any informant involved was credible or his information reliable, *Aguilar v. Texas,* 378 U. S. 108, 114, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964), and such judicial officer is entitled to draw reasonable inferences from the facts contained in the affidavit based on his experience in such matters, *Irby v. U.S.,* 114 U. S. App. D. C. 246, 314 F. 2d 251, 253 (1963), *cert. denied,* 374 U. S. 842 (1963)." *Id.* at 518-519.

Stripped of all gloss and technicalities, "probable cause" is less than certainty of proof, but more than suspicion or possibility." *Id.* at 519.

Our concern in determining whether a warrant necessary to the reasonableness of a search and seizure has been issued upon an affidavit supporting probable cause is only with the question " 'whether the affiant had reasonable grounds at

the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched; and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant.' " *State v. Edwards,* 266 Md. at 519, quoting *Dumbra v. United States,* 268 U. S. 435, 441, 45 S. Ct. 546 (1925). It follows that if the facts set out in the affidavit are "stale," the affiant would not have reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched. The question is what constitutes "stale probable cause."

### III

We find most cogent the expression of the rule regarding stale probable cause as set out in *Garza v. State,* 120 Tex. Crim. 147, 48 S.W.2d 625 (1932):

> "The affidavit for a search warrant on probable cause, based on information and belief, should in some manner, by averment of date or otherwise, show that the event or circumstance constituting probable cause, occurred at the time not so remote from the date of the affidavit as to render it improbable that the alleged violation of law authorizing the search was extant at the time the application for the search warrant was made." *Id.* at 149.

*See* 2 Varon, Searches, Seizures and Immunities 431 (2d ed. 1974). Peterson asserts, and the State agrees, that the question of whether probable cause is stale has never heretofore been directly addressed by this Court. We, at the least, touched on the matter in *State v. Edwards, supra.* The Court of Special Appeals directly considered the issue shortly after the creation of the Court. *Clayton v. State,* 1 Md. App. 500, 231 A. 2d 717 (1967). The point has since been before that court and determined several times. *Johnson v.*

*State,* 14 Md. App. 721, 288 A. 2d 622, *cert. denied,* 266 Md. 738, *cert. denied,* 409 U. S. 1039 (1972); *Washburn v. State,* 19 Md. App. 187, 310 A. 2d 176 (1973); *Andresen v. State,* 24 Md. App. 128, 331 A. 2d 78, *cert. denied,* 274 Md. 725 (1975), *aff'd,* 427 U. S. 463 (1976).[3] The question has also been considered by federal courts and state courts in other jurisdictions. The rule as stated in *Garza* properly states the law and embodies the holdings of the Court of Special Appeals, the more persuasive teachings of the courts in other jurisdictions, and the general opinions of text writers and commentators.

In *Clayton v. State, supra,* the Court of Special Appeals stated: "There is no statute in this State providing that the facts in the application, set forth to establish probable cause, must result from observations made within a designated time before the issuance of the warrant,"[4] and it found no Maryland case directly on point. It thought that "the remoteness of the facts observed from the date of issuance of the warrant is an element to be considered in each instance by the issuing authority in his determination . . . of whether it appears that there is probable cause." *Id.* 1 Md. App. at 503. In *Johnson v. State, supra,* finding no cases which lay down a rigid rule, the intermediate court applied the guidelines expressed in *Clayton* in holding that a lapse of twenty-six days between the observations of the facts set out in the affidavit and the issuance of the warrant was not so remote, when considered in the circumstances of the case, so as to invalidate the warrant. *Id.* 14 Md. App. at 729-731. This Court later the same year decided *State v. Edwards, supra.* The Court of Special Appeals in *Edwards v. State,* 13 Md. App. 546, 284 A. 2d 10 (1971) had found that the affidavit did

---

3. The question of the staleness of the probable cause was also presented to the Court of Special Appeals in Taylor v. State, 17 Md. App. 536, 302 A. 2d 646 (1973) but was not reached because of a finding that there was otherwise no probable cause for the issuance of the warrant. *Id.* at 544.

4. Maryland Code (1957, 1967 Repl. Vol.) Art. 27, § 551 provided for the issuance of search warrants by certain judges upon an affidavit containing facts within the personal knowledge of the affiant that there is probable cause "to believe that any misdemeanor or felony *is being committed* by any individual or in any . . . premises . . . ." (Emphasis added).

not show probable cause for the issuance of the search warrant. As the affidavit failed to state the time of the events relied upon to show probable cause, there was no way, the court believed, that the magistrate could determine that the premises involved probably contained contraband on the date the warrant issued. *Id.* 13 Md. App. at 548. We disagreed with this conclusion. We thought that the very language of an affidavit, even though not specifying in so many words an exact date or time, when taken as a whole may be indicative of a present violation, and we referred to the decisions of a number of federal and state courts, including *United States v. Harris*, 403 U. S. 573, 579, 91 S. Ct. 2075 (1971) and *Rugendorf v. United States*, 376 U. S. 528, 533, 84 S. Ct. 825 (1964), which supported this view. *State v. Edwards*, 266 Md. at 521-524. The Court of Special Appeals thereafter decided *Washburn v. State*, 19 Md. App. 187, 310 A. 2d 176 (1973). Washburn, convicted of violations of the Controlled Dangerous Substances Laws, claimed that the information upon which the affidavit was based "was stale, and, consequently, furnished no probable cause for the issuance of the warrant." *Id.* at 194. The Court of Special Appeals reiterated that there was no statute in this State mandating a designated time within which a warrant must issue after observation of the facts upon which the affidavit in support of the warrant is founded. Again, it was unable to locate any judicial decision that spelled out a rigid time rule, and declined to adopt such a rule. It affirmed the *Johnson* holding that remoteness is not the sole or controlling element in determining probable cause, but only one of the factors to be considered in the circumstances of the case. *Id.* at 194. The circumstances shown by the facts set out in the affidavit before the court clearly showed, it determined, that there was a continuous violation by Washburn of the Laws. *Id.* at 195.

In *Andresen v. State*, 24 Md. App. 128, 331 A. 2d 78, *cert. denied*, 274 Md. 725 (1975), *aff'd*, 427 U. S. 463 (1976), the Court of Special Appeals explicated the general rule regarding stale probable cause recognized in *Clayton*,

discussed in *Johnson,* applied in *Washburn,* and implied in this Court's *Edwards*:

"The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed." *Id.* 24 Md. App. at 172.

When *Andresen* went before the Supreme Court of the United States, *Andresen v. Maryland,* 427 U. S. 463, 96 S. Ct. 2737 (1976), one of the bases of Andresen's argument that the affidavits failed to establish probable cause was that the information on which they were based was so stale that there was no reason to believe that the documents sought were still in his possession. He "argued that there was a three-month delay between the completion of the transactions on which the warrants were based, and the ensuing searches, and that this time lapse precluded a determination that there was probable cause to believe that petitioner's offices contained evidence of the crime." *Id.* at 478 n. 9. The Court found that the contention was belied by the particular facts of the case, which it thought amply supported the belief that Andresen retained the sought-for records. *Id.* at 478-479 n. 9.

For cases to the effect that where the affidavit properly

recites facts indicating activity of a protracted and continuous nature, or a course of conduct, the passage of time becomes less significant, so as not to vitiate the warrant, *see Mapp v. Warden, N. Y. State Corr. Inst., Etc.,* 531 F. 2d 1167 (2nd Cir. 1976); *United States v. Steeves,* 525 F. 2d 33 (8th Cir. 1975); *United States v. Rahn,* 511 F. 2d 290 (10th Cir.), *cert. denied,* 423 U. S. 825 (1975); *United States v. Harris,* 482 F. 2d 1115 (3rd Cir. 1973); *United States v. Johnson,* 461 F. 2d 285 (10th Cir. 1972); *United States v. Guinn,* 454 F. 2d 29 (5th Cir.), *cert. denied,* 407 U. S. 911 (1972); *United States v. Townsend,* 394 F. Supp. 736 (E. D. Mich., 1975); *United States v. Harruff,* 352 F. Supp. 224 (E. D. Mich., 1972); *Caffey v. Swenson,* 332 F. Supp. 624 (W. D. Mo., 1971); *Underdown v. District of Columbia,* 217 A. 2d 659 (D.C. Ct. App. 1966); *State v. Bean,* 239 N.W.2d 556 (Iowa 1976); *State v. Birkestrand,* 239 N.W.2d 353 (Iowa 1976); *State v. Chaffin,* 324 S. 2d 369 (La. 1975), *cert. denied,* 426 U. S. 907 (1976).

*United States v. Steeves, supra, United States v. Johnson, supra,* and *State v. Willey,* 363 A. 2d 739 (Me. 1976) are examples of cases holding that whether a past probable cause is still continuing at the time of the application for a search warrant is not determined merely by the passage of time; it may also depend on the particular kind of criminal activity involved, the length of the activity, and the nature of the property to be seized.

Compare the following cases in which the search warrant was found to be invalid because the underlying facts were too remote in time from the date of the affidavit and were not sufficient to show that the criminal activity continued up to or about the time of the issuance of the warrant: *United States v. Neal,* 500 F. 2d 305 (10th Cir. 1974); *Durham v. United States,* 403 F. 2d 190 (9th Cir. 1968), *vacated on other grounds,* 401 U. S. 481 (1971) (per curiam); *Rosencranz v. United States,* 356 F. 2d 310 (1st Cir. 1966); *Schoeneman v. United States,* 317 F. 2d 173 (D. C. Cir. 1963); *State v. Pulgini,* 366 A. 2d 1198 (Del. 1976); *State v. Willey, supra; People v. Broilo,* 58 Mich. App. 547, 228 N.W.2d 456 (1975); *People v. Siemieniec,* 368 Mich. 405, 118

N.W.2d 430 (1962); *People v. Wright*, 367 Mich. 611, 116 N.W.2d 786 (1962); *State v. Scheidemann*, 252 Or. 70, 448 P. 2d 358 (1968); *State v. Ingram*, 251 Or. 324, 445 P. 2d 503 (1968); *Commonwealth v. Novak*, 233 Pa. Super. 236, 335 A. 2d 773 (1975); *Commonwealth v. Eazer*, 455 Pa. 320, 312 A. 2d 398 (1973); *Commonwealth v. Shaw*, 444 Pa. 110, 281 A. 2d 897 (1971). *Compare also Sgro v. United States*, 287 U. S. 206, 53 S. Ct. 138 (1932), in which the search warrant was not executed within ten days after its issuance as required by statute, a defect not cured by "reissuing" the warrant after a lapse of twenty-one days.

*See also* 2 Varon, Searches, Seizures and Immunities 426-431 (2d ed. 1974); 1 Wharton's Criminal Procedure § 161 (12th ed. 1974); 68 Am. Jur. 2d *Searches and Seizures* § 70 (1973); Annot., 100 A.L.R.2d 522 (1965).

Common to all the cases is the firmly established principle that "whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case." *Cooper v. California*, 386 U. S. 58, 59, 87 S. Ct. 788 (1967). *See South Dakota v. Opperman*, 428 U. S. 364, 375, 96 S. Ct. 3092 (1976). " '[N]o mathematical formula exists for application either by a trial or appellate court in deciding whether a search warrant was supported by probable cause. Each case depends upon a sensitive appraisal of the circumstances shown to the issuing judge.' " *State v. Edwards*, 266 Md. at 524, quoting *State v. Kasabucki*, 52 N. J. 110, 117-118, 244 A. 2d 101 (1968). Further, because the Fourth Amendment's commands are practical and not abstract, the affidavit supporting it must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. *State v. Edwards*, 266 Md. at 519-520. *See United States v. Harris*, 403 U. S. at 577, *United States v. Ventresca*, 380 U. S. 102, 108-109, 85 S. Ct. 741 (1965).

## IV

In the case at hand, a record extract was not submitted to us. We are presented, in narrative form, with the recitals in

the application for the search warrant, Officer Raymond F. Gheen, affiant, through an agreed statement of facts included in Peterson's brief. Maryland Rule 828 g. We set them out verbatim:

"(1) During the week of September 9, 1974, Gheen was advised by a confidential informant that Appellant 'was involved in the illegal distribution of Controlled Dangerous Substances from his home address of 5286 Marlboro Pike, #202, Hillside, Prince George's County, Maryland';

"(2) During the week of October 1, 1974, Gheen learned that Appellant had been convicted in 1969 in the District of Columbia of conspiracy to violate the federal narcotics law, that he had been sentenced to five years in prison, and that he was currently on parole for that offense;

"(3) During the week of October 9, 1974, a surveillance of Appellant's apartment was conducted by Gheen and other police officers. In the course of this surveillance, the police observed four known users of narcotics enter Appellant's apartment and remain for short periods of time;

"(4) During the week of October 19, 1974, the confidential informant referred to above purchased narcotics from Appellant at his apartment;

"(5) During the week of October 31, 1974, this informant observed Appellant distributing narcotics to other persons in his apartment;

"(6) During the week of November 3, 1974, another surveillance of Appellant's apartment was conducted by Gheen and other police officers;

"(7) During the week of November 23, 1974, this informant purchased narcotics from Appellant at a pre-arranged location in the District of Columbia; and

"(8) During the week of December 21, 1974, Gheen was advised by another confidential

informant that he had known Appellant for two years and that he had purchased narcotics from Appellant within the past thirty days and on at least ten occasions during the past seven months."

In denying the motion to suppress, any reasons the trial judge may have given for rejecting Peterson's contention that the warrant was based on "stale" probable cause are not contained in the agreed statement of facts. The Court of Special Appeals thought that "the criminal activity was regenerating, the criminal entrenched, and the thing to be seized, while easily transferable, was just as easily replaced. Thus, the probable cause was not stale." *Peterson v. State, supra,* at page 9 of the unreported opinion. We share this view. We think that the facts set out in the affidavit gave the affiant reasonable grounds at the time of his affidavit and the issuance of the warrant to believe that narcotics were in Peterson's apartment. In other words, the facts were such that a reasonably discreet and prudent man would be led to believe that the apartment contained unlawful drugs. By its nature, traffic in illegal drugs is ordinarily a regenerating activity, and there was clear indication here that the activity was continual, a course of conduct regularly followed over a protracted time. There was also ample reason to believe from the recitals that Peterson was entrenched in the illicit activity, not only from the information given by confidential informants, but from actual purchases from time to time from him. He followed a persistent pattern of criminal involvement relating to narcotic drugs. It is true that narcotics are easily transferable, but the repeated distributions evident from the facts showed that they were readily replaceable and that Peterson had an available source of supply. It is "probable" therefore, that Peterson would keep the contraband in his apartment, not as a mere place of convenience, but as a secure operational base. As his home, it was there that he had a reasonable expectation of privacy. We do not think that this probability was fatally eroded by the absence of observed activity or informant reports concerning the

apartment during the latter stages of the surveillance. On the contrary, the affiant may well have reason to believe that Peterson was carrying on the actual distribution of the drugs away from the apartment to make more secure his use of it to store the drugs. In short, when the affidavit is tested and interpreted in a common sense and realistic fashion, the probable cause was not "stale" under the circumstances of this case, but existed at a time not so remote from the date of the affidavit as to render it improbable that the alleged violation of the law authorizing the search was extant at the time the application for the search warrant was made. Thus, the warrant was valid as issued upon probable cause and the search and seizure were reasonable as under the authority of a valid warrant. The search and seizure being reasonable, it did not violate constitutional guarantees, and the evidence was properly admissible. The Court of Special Appeals was correct in holding that the trial court did not err in denying Peterson's motion to suppress the evidence obtained by the challenged search and seizure. We affirm its judgment.

*Judgment affirmed; costs to be paid by appellant.*