# THOMAS JAMES DAVIDSON *v.* STATE OF MARYLAND

[No. 942, September Term, 1982.]

*Decided April 12, 1983.*

The cause was submitted on briefs to WEANT, GARRITY and ALPERT, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *David P. Sutton, Assigned Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Ann E. Singleton, Assistant Attorney General, Thomas E. Hickman, State's Attorney for Carroll County, Edward M. Ulsch* and *Geoffrey S. Black, Assistant State's Attorneys for Carroll County,* for appellee.

ALPERT, J., delivered the opinion of the Court.

On March 29, 1982, a jury in the Circuit Court for Carroll County (Burns, J. presiding) convicted Thomas James Davidson, the appellant, of possession of marijuana with intent to distribute, possession of controlled paraphernalia, and possession of marijuana. He was sentenced to five years imprisonment, which was suspended, and placed on supervised probation for three years. This appeal followed and presents us with the following two questions:

1. Did the court err in denying appellant's motion to suppress incriminatory statements made by him without benefit of counsel at the trial of another?

2. Did the lower court err in denying appellant's motion to suppress the items seized from his residence?

Finding no error in either regard, we shall affirm.

I. *Trial Judge's Failure To Advise Trial Witness Of Right To Counsel*

Appellant claims that because he "was not informed of his constitutional right to counsel before making incriminatory statements, those statements should be suppressed." Otherwise stated, he claims he should have been given his

*Miranda* warnings. Appellant, who was not present at the time of the search of his premises made by police pursuant to a search warrant, subsequently voluntarily turned himself in to police custody. Although charged with drug related offenses emanating from the search, those charges were dismissed at a preliminary hearing in the District Court for Carroll County. Appellant, however, was called as a defense witness at the trial of Chadwick Dyer, another individual charged as a result of the search. Before Davidson testified, counsel for Dyer and the prosecutor requested that appellant be informed of his Fifth Amendment right against compulsory self incrimination:

> MR. JOHNSON: . . . I'm strictly asking the Court, in view of the fact that Mr. Davidson could be prosecuted as a result of his testimony, whether he should not be advised of his fifth amendment rights. I would proffer that he is the person who is the tenant of the place that was raided, although he was not present at the time of the raid, that he, as a result of this hearing could be prosecuted. There was a preliminary hearing conducted of which I'm aware and charges were dismissed against him because of lack of probable cause. I think he should be aware of the fact that the testimony he gives today could be used as a basis for evidence for prosecution if the State were to elect to proceed against him. In all fairness, I'm calling him as a witness and I wanted to point this out to the Court.

> The judge agreed and so advised appellant:

> THE COURT: Mr. Davidson, let me ask you a few preliminary questions before Mr. Johnson starts his examination of you. Mr. Johnson has advised me in a Bench conference that certain charges were placed against you, I'm not too sure if they result out of the charges in this case or are similar thereto, but anyway, certain charges were placed against you and there was a preliminary hearing.

MR. JOHNSON: Your Honor, I understand that Mr. Davidson was charged along with everyone else. . .

THE COURT: Okay.

MR. JOHNSON: . . . in this particular incidence.

THE COURT: In this particular incidence. Okay. So, certain charges were placed against you involving this particular incidence. There was a preliminary hearing in the District Court of Maryland for Carroll County at which time the charges were dismissed for lack of probable cause, is that correct?

THE WITNESS: Yes, sir.

THE COURT: Okay. Now, the only thing I want you to make sure — I want to make sure that you understand, I believe that Mr. Johnson has spoken to you about this. I don't know what questions will be asked of you and I don't know what your answers will be, but it would be possible though that depending upon the questions and the answers that you could be re-charged if the State felt that certain testimony came from you which would allow them to go forward with the charges. You have an absolute right not to testify, so as to protect yourself under the Fifth Amendment which gives you the right not to incriminate yourself. Do you understand?

THE WITNESS: Yes, sir.

THE COURT: Do you have any questions you wish to ask me on this point?

THE WITNESS: No, sir.

Appellant's testimony at the Dyer trial resulted in his being arrested and charged with committing the offenses in question. Certain statements from that trial were used, over objection by appellant, in the State's case in chief. Appellant contends that it was error for the trial judge in the Dyer trial not to inform him of his right to counsel. We disagree.

*Miranda v. Arizona,* 384 U.S. 436 (1966) is premised upon a

custodial interrogation. Before a person in custody is interrogated, he must be advised of certain basic rights, including the right to counsel. In the case *sub judice* we hold that appellant was not in custody and the court was not in error in failing to inform him of the right to counsel. A person is in custody if law enforcement officials formally arrest him or restrain his freedom of action in any significant manner. *Cummings v. State,* 27 Md. App. 361, 341 A.2d 294 (1975). It is noteworthy in this regard that appellant understood his right against self incrimination, for he invoked this right at several junctures during his testimony.

We do not believe that *Miranda* was ever intended to reach this type of factual scenario. Indeed, *Miranda* speaks of protecting an "isolated" defendant held "incommunicado." The Supreme Court observed "As a practical matter, the compulsion to speak in the isolated setting of the police station may well be greater than in courts or other investigations, where there are often impartial observers to guard against intimidation or trickery." *Miranda, supra,* 384 U.S. at 461. Additionally, as we observed in *Marrs v. State,* 53 Md. App. 230, 232-33, 452 A.2d 992 (1982):

> The privilege against self-incrimination, which *Miranda* warnings are primarily intended to secure, mandates that no person shall be compelled in any criminal case to be a witness against himself. U.S. Const., amend. V. In order to be subject to *Miranda* warnings, a defendant's statement must flow from "custodial interrogation" within the meaning of *Miranda,* there defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612.

* * *

> The rationale underlying the suppression of statements given a law enforcement officer or any other 'official interrogator' without proper safeguards is that the circumstances of custodial interrogation may compel an accused to make incriminating disclosures.

Appellant's rights were adequately protected when the trial judge informed him of his right against compulsory self-incrimination. *See, State v. Williams,* 59 N.J. 493, 284 A.2d 172, 177 (1971); *Beckley v. State,* 443 P.2d 51 (Alaska 1968). See also *Leuschner v. State,* 45 Md. App. 323 (1980) and 49 Md. App. 490 (1981). There were sufficient judicial safeguards to protect his interests. The mere possibility that a witness may later be indicted based upon his testimony is not sufficient to invoke the right to counsel admonition. *See, United States v. Mandujano,* 425 U.S. 564 (1976). In that case, as a result of certain information concerning his participation in an attempted sale of heroin, Mandujano was subpoenaed to testify before a grant jury investigating narcotic traffic in the area. The prosecutor warned him that he was not required to answer any questions that might incriminate him. Subsequently, he was charged with perjury for making false statements to the grand jury about his involvement in the attempted heroin sale. The District Court granted respondent's motion to suppress his grand jury testimony because he was not given the warnings called for by *Miranda;* holding that *Mandujano* was a "putative" or "virtual" defendant when called before the grand jury and therefore entitled to full *Miranda* warnings. The U.S. Court of Appeals for the Fifth Circuit affirmed. The Supreme Court reversed; Chief Justice Burger, speaking for the Court, stated:

> In this case, the Court of Appeals required the suppression of perjured testimony given by

respondent, as a witness under oath, lawfully summoned before an investigative grand jury and questioned about matters directly related to the grand jury's inquiry. The court reached this result because the prosecutor failed to give *Miranda* warnings at the outset of Mandujano's interrogation. Those warnings were required, in the Court of Appeals' view, because Mandujano was a "virtual" or "putative" defendant — that is, the prosecutor had specific information concerning Mandujano's participation in an attempted sale of heroin and the focus of the grand jury interrogation, as evidenced by the prosecutor's questions, centered on Mandujano's involvement in narcotics traffic. The fundamental error of the prosecutor, in the court's view, was to treat respondent in such a way as to "'smack' of entrapment"; as a consequence, the court concluded that "elemental fairness" required the perjured testimony to be suppressed. 496 F.2d, at 1058, and n. 8.

The court's analysis, premised upon the prosecutor's failure to give *Miranda* warnings, erroneously applied the standards fashioned by this Court in *Miranda.* Those warnings were aimed at the evils seen by the Court as endemic to police interrogation of a person in custody. *Miranda* addressed extrajudicial confessions or admissions procured in a hostile, unfamiliar environment which lacked procedural safeguards. The decision expressly rested on the privilege against compulsory self-incrimination; the prescribed warnings sought to negate the "compulsion" thought to be inherent in police station interrogation. But the *Miranda* Court simply did not perceive judicial inquiries and custodial interrogation as equivalents. "[T]he compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery." 384 U.S. at 461.

The Court thus recognized that many official investigations, such as grand jury questioning, take place in a setting wholly different from custodial police interrogation. Indeed, the Court's opinion in *Miranda* reveals a focus on what was seen by the Court as police "coercion" derived from "factual studies [relating to] police violence and the 'third degree' . . . physical brutality — beating, hanging, whipping — and to sustained and protracted questioning incommunicado in order to extort confessions. . ." *Id.*, at 445-446. To extend these concepts to questioning before a grand jury inquiring into criminal activity under the guidance of a judge is an extravagant expansion never remotely contemplated by this Court in *Miranda;* the dynamics of constitutional interpretation do not compel constant extension of every doctrine announced by the Court. (footnote omitted).

The teachings of *Mandujano* apply with even greater force to the examination of a witness in a criminal case being tried before a judge or jury.

## II. *The Search and Seizure Warrant*

Certain physical evidence was seized from the residence of the appellant on May 1, 1981 pursuant to a search and seizure warrant issued that same day. Appellant moved to suppress the evidence seized, urging that the affidavit in support of the search warrant was insufficient to establish probable cause in that the facts and circumstances set forth were so remote from the date of the affidavit as to render it improbable that violations of law were then occurring at the affected premises. Specifically, he argued that the information recited in the affidavit was stale. That affidavit set forth that on an unspecified occasion between April 12-30, 1981 an informant made a purchase of a controlled dangerous substance at the location in question with money furnished by police officers. The judge denied the motion to suppress.

On the question of whether a potential time lapse of nineteen days between the date of the controlled buy and the issuance and execution of the warrant renders the search improper, we find no error.

The test for staleness enunciated in *Peterson v. State,* 281 Md. 309, 379 A.2d 164 (1977) is whether the information constituting the probable cause in the search warrant affidavit is so remote from the date of the affidavit "as to render it improbable that the alleged violation of law authorizing the search was extant at the time the application for the search warrant was made." *Id.* at 314, citing *Garza v. State,* 120 Tex. Crim. 147, 149, 48 S.W.2d 625 (1932). The time element, while a factor to consider, is not the only factor. *Id.* at 315; *Andresen v. State,* 24 Md. App. 128, 172, 331 A.2d 78, *cert. denied,* 274 Md. 725, *aff'd,* 427 U.S. 463 (1976). Common sense demands that the Court also consider such factors as the nature of the crime under investigation, the duration of the investigation, the type of evidence which is sought and the location of the search in determining whether probable cause has evaporated. As colorfully stated by the *Andresen* court: "The hare and the tortoise do not disappear at the same rate of speed." *Andresen, supra,* 24 Md. App. at 172, 331 A.2d at 106.

The facts of each individual case determine whether probable cause still exists on the day a warrant is executed. *Johnson v. State,* 14 Md. App. 721, 729-30, 288 A.2d 622 (1972). Article 27, §551 mandates that a search and seizure warrant be executed within fifteen days after its issuance. In this respect, there was compliance with the statute by the local officers. Further, the police could have believed that there was ongoing criminal activity at the location where the controlled buy was made and that probable cause continued to exist. Because the business of dealing in illegal drugs is ordinarily a regenerating activity carried on over a period of time, *Peterson v. State, supra,* 281 Md. at 321, 379 A.2d at 170, we hold probable cause for the search and seizure continued to exist on the date of the execution of the warrant. The character of the crime, of the criminal, of the

thing to be seized, and of the place to be seized all lead to the inescapable conclusion that probable cause still existed when the warrant was executed. *See, Andresen, supra.*

As to the question of whether there was sufficient specificity in the application to justify the issuance of the search warrant, we likewise find no error. The properly executed directly observed controlled buy against the appellant was sufficient to establish probable cause. *Hignut v. State,* 17 Md. App. 399, 415, 303 A.2d 173 (1973). Further, we find no error in the failure to disclose in the affidavit with specificity the identity of the informant, the precise date of the controlled buy, and the kind, quantity, and price of the drugs purchased. This information was not revealed to protect the informant, and we perceive no error in that regard.

> *Judgment affirmed; appellant to pay the costs.*