The STATE of Delaware

v.

Joseph A. PULGINI, Defendant.

Superior Court of Delaware,
New Castle County.

Submitted Oct. 8, 1976.

Decided Nov. 1, 1976.

Richard R. Cooch, Deputy Atty. Gen., Dept. of Justice, Wilmington, for State of Delaware.

Robert K. Beste, Jr., Biggs & Battaglia, Wilmington, for defendant.

O'HARA, Judge.

Joseph A. Pulgini, an Inspector for the State of Delaware Motor Vehicle Division, was indicted by the Grand Jury of New Castle County and charged with fourteen counts amounting to five counts of delivering vehicle inspection cards under 21 Del.C. § 6707, five counts of issuing false certificates (inspection cards) under 11 Del.C. § 878, and four counts of receiving bribes under 11 Del.C. § 1203.

Defendant presents four motions: 1) a motion to dismiss based on a challenge to the Grand Jury, or for a full-scale hearing on the matter; 2) a motion to dismiss on the grounds that some of the counts charged are based on the same evidence yet inconsistent, or alternatively, that the State must make an election of counts; 3) a motion to suppress the contents of a telephone conversation on the ground that the conversation was illegally intercepted in violation of 11 Del.C. § 1335 and/or is inadmissible as not authorized under 11 Del. C. § 1336; and 4) a motion to suppress evidence seized from defendant's home pursuant to a search warrant on grounds of staleness.

Defendant's motion to dismiss charging defective Grand Jury selection advances two arguments. The first is that the system of Grand Jury selection is unconstitutional as violating the equal protection clause of the Fourteenth Amendment in that it operates to systematically exclude or underrepresent the middle class, well-educated, middle or younger age groups and whites. This argument is easily disposed of by the decision in *State v. Fusco,* Del.Super., 335 A.2d 268 (1975). As in *Fusco,* defendant here presents statistics having a bearing on the possibilities inherent in the State's system for selection of Grand Jury members that members will be selected who are not representative of the majority of the population of the particular area from which the juror is selected. However, in *Fusco,* this Court

said that without a showing that a group had been excluded or significantly under-represented *in fact*, the challenge to the Grand Jury could not prevail. No such showing was made there. Nor is one made here, and defendant's motion to dismiss in the instant case cannot succeed on this ground. Further, defendant does not present *sufficient facts upon which the Court would be justified in ordering a full-scale hearing on the issue.*

■ Defendant's second argument regarding the Grand Jury is that the Jury Commissioners have not adhered to the statutory procedure for selecting Grand Jurors. 10 Del.C. § 4505 and § 4507 describe how Grand Jurors are to be selected. According to § 4505:

"The Jury Commissioners for each county shall, in the month of December in each year, select, from the citizens of each county who are liable to serve as jurors . . ., in such proportion for each representative district of the county as may be deemed proper, the names of at least 50 sober and judicious persons . . . There shall be provided for each representative district of each county, respectively, 2 boxes, one of which shall be marked 'Grand Jurors,' and the other shall be marked 'Petit Jurors.' The names of the persons selected from each representative district to serve, if summoned, as grand jurors, shall be placed in the box, for the representative district from which they are selected, marked 'Grand Jurors.' . . ."

Section 4507 provides:

"(a) The Jury Commissioners for each county, respectively, shall each year, during the month of June and prior to June 15, in the presence of such persons as may choose to be present, draw from the boxes marked 'Grand Jurors' the names of 7 persons for New Castle County . . ., one of whom shall be selected from and shall be a resident of each of the even numbered representa-

tive districts in the county in which he or she is selected to serve as grand juror. . . .

(b) The said Commissioners for each county, respectively, shall each year during the month of December and prior to December 15, in the presence of such persons as may choose to be present, draw from the boxes marked 'Grand Jurors' the names of 8 persons for New Castle County . . ., one of whom shall be selected from and shall be a resident of each of the old numbered representative districts in the county in which he or she is selected to serve as a grand juror. . . ."

To support his claim, defendant offers a summary of a statement of one of the then Jury Commissioners, Thomas Bayard, to the effect that at least on one occasion in the past the Commissioners did not draw the jurors' names from boxes as provided in the Code, but rather they leafed through voter registration lists and jurors' questionnaires to find "suitable" persons. Without more, the Court finds this isolated statement to be insufficient to warrant either dismissal or a full-scale hearing. Therefore, defendant's first motion to dismiss should be denied.

■ Defendant's second motion to dismiss is on the ground that inconsistent offenses are charged based on the same evidence. Counts 1, 4, 7, 9 and 12 charge defendant with violating 21 Del.C. § 6708(b), which provides:

"No person, *unless duly authorized* by the Director of the Division of Motor Vehicles, shall sell or deliver any blank certificate of title, blank registration card, vehicle identification plate, warranty sticker, or vehicle inspection card." (Emphasis added).

Counts 2, 5, 8, 10 and 13 charge defendant with violating 11 Del.C. § 878, which provides:

"A person is guilty of issuing a false certificate when, *being a public servant*

*authorized* by law to make or issue official certificates or other official written instruments, and with intent to defraud, deceive, or injure another person, he issues such an instrument, or makes the same with intent that it be issued, knowing that it contains a false statement or false information." (Emphasis added).

Defendant's position is that since the first set of counts alleges that defendant was *not* a person *authorized* by the director, etc., and the second alleges defendant *was* a public servant *authorized,* the counts are inconsistent. However, it appears to the Court that Pulgini, an Inspector for the Motor Vehicle Division, could be "a public servant authorized by law to make or issue official certificates" and violate 11 Del.C. § 878 by issuing the charged inspection certificates. Also, it could be said that Pulgini was not "duly authorized" to issue the certificates in the manner charged and was also in violation of 21 Del.C. § 6708(b) if the facts alleged are proved. Therefore, the Court finds the counts not inconsistent. Defendant's second motion to dismiss is denied, and no election of counts will be ordered.

■ Next, defendant moves to suppress the contents of a telephone conversation. The conversation in question is one between defendant and an informant which was intercepted by the police with consent of the informant, but without a court order. Defendant's motion contends first that the conversation was illegally intercepted in violation of 11 Del.C. § 1335, and second, that in any case it should be suppressed as not having been performed pursuant to a court order.

With respect to illegality, § 1335, describing what constitutes "violation of privacy," specifically does not apply to "Acts done by police officers as provided in §§ 1336 and 1431 of this title [11]." 11 Del. C. § 1335(6)(e). Section 1431 provides a specific exception for the overhearing by police of telephone messages indicating gambling activity. Section 1336 is the general provision covering "Wiretapping and electronic surveillance." It provides criminal penalties as well as procedures for authorization of interceptions. Subsection (c)(2) provides:

"(c) It shall not be unlawful under this section for:

(2) A person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or 1 of the parties to the communication has given prior consent to such interception . . . ."

It appears that this provision applies to the situation at hand. The police can be seen as "acting under color of law." Also, a party to the communication, the informant, gave consent. Therefore, the interception was legal.

■ With respect to the issue of admissibility, subsection (t) sets forth the grounds upon which a party to an intercepted wire (such as telephone) or oral communication may move for suppression of the communication or evidence derived therefrom. A motion may be made if:

"(1) The communication was unlawfully intercepted;

(2) The order of authorization is insufficient on its face;

(3) The interception was not made in conformity with the order of authorization."

As we have seen above, subsection (c)(2) applies to the interception to render it lawful. Therefore, ground (1) is not available to defendant. Ground (3) is also not available since there was no order of authorization and this ground appears to speak to the execution of such an order. In addition, with respect to ground (2), one could strain the language of the statute to say that an *unobtained* order is "insufficient on its face." Such a reading of ground (2) would imply that an authoriza-

tion order might always be necessary. However, the statute does not state such necessity, and the Court declines to go that far. We find then that while ground (1) would operate to allow suppression of unauthorized interceptions not falling within the subsection (c)(2) exception, there is no provision for suppression of a *lawful* interception which has not been authorized.

Therefore, the statute appears divided into two basic situations: 1) where the interception is not unlawful and therefore no motion to suppress may prevail; and 2) where the interception would be unlawful but for its being validly authorized by a court order. Subsection (t) can be seen then as providing for the suppression of *illegal* interceptions.

The interception in question being lawful, the motion to suppress is denied.

Finally, defendant has moved to suppress evidence obtained in a search of his home made pursuant to an affidavit and search warrant dated September 3, 1975 on the grounds that the facts alleged to constitute probable cause fail to do so because of staleness.

Briefly, the affidavit in question recites the following facts: On June 19, 1975, a reliable informant informed the police that for two years prior to July, 1974, Pulgini had made illegal sales to him, from the inspection lanes in Wilmington and from his home, of motor vehicle inspection cards and documents. On June 23, 1975, the informant's conversation with defendant was overheard by police by means of a "bug" concealed on the informant's person. The discussion involved the sale of three motor vehicle inspection cards. On July 25, 1975, a second reliable informant had a transaction with defendant in which he purchased a motor vehicle inspection card. This occurred at the inspection lanes. Again, the informant had a device concealed on him with enabled police to monitor this conversation. Such monitored transactions between the second informant

and Pulgini also occurred on July 28, 1975 and on August 4, 1975.

On August 11, 1975, this informant attempted a telephone conversation at the inspection lanes with defendant, but defendant was on vacation. The informant then called him at home. Pulgini told him to come there. He did, and a transaction took place between the defendant and the informant at Pulgini's home. Pulgini left the informant in the kitchen and went to the second floor, returning in a few minutes with a motor vehicle inspection card which he sold to informant, telling him that since he now knew where he lived he could just come to the house and he, Pulgini, would get him anything he needed. The first informant had also said that the transactions he had had with Pulgini at Pulgini's home, all occurring prior to July, 1974, had involved defendant's going to the second floor to get the documents.

This last alleged transaction took place on August 11, 1975; yet, the affidavit was not executed and the search warrant not obtained until twenty-three days later on September 3, 1975. Therefore, defendant is arguing that the facts supporting the search warrant are too stale to constitute probable cause.

With regard to staleness, Chief Justice Hughes said in *Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932), that the facts alleged to back up the warrant must be "so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time*." (Emphasis added). This standard was echoed in *United States v. Harris*, 3rd Cir., 482 F.2d 1115 (1973): "probable cause to justify the issuance of a search warrant must exist at the time the warrant is issued." The importance of time is also a precept of Delaware law: "probable cause must exist to believe that specified items are *presently* on the premises, and clearly that probability is lessened by the passage of time." *Pierson v. State*, Del.Supr., 338 A.2d 571 (1975).

 It is, indeed, true that time alone will not render stale the facts alleged to constitute probable cause. *State v. Ramirez*, Del.Super., 351 A.2d 566 (1976). The circumstances of a particular case must be considered. *Sgro v. United States*, supra. In addition, "where the alleged criminal activity is of a potentially continuing nature (such as bookmaking) the passage of time will not necessarily have a significantly minimizing effect on the reliability of the tip." *State v. Ramirez*, supra.

Certainly, as the State points out, the transactions with the defendant at the inspection lanes *combined* with the most recently alleged transaction at defendant's home would indicate some continuing activity. However, search warrants speak to a search of a *particular place*. With respect to the particular place involved here, Pulgini's home, there is no allegation of a series of criminal acts. Only one recent transaction at his home is alleged, the allegation of undated transactions occurring between the first informant and defendant prior to July, 1974 being too remote in time to be considered in assessing probable cause for the September, 1975 search.

The State points to Pulgini's alleged statement at the time of the last transaction that since informant now knew where defendant lived he could just come to his house and defendant would get him anything he needed. Still, despite this statement, there must be some limits drawn to the amount of time allowed to pass without staleness setting in. Our system continues to recognize a special right not to have one's home invaded by searches based on suspicion or conjecture. The standard of probable cause must be strictly followed, and this cannot be said too strongly where a search of one's home is involved.

 Therefore, in the absence of information that continuing criminal transactions were actually taking place *in Pulgini's home*, this Court finds the unexplained twenty-three days to have rendered stale the facts asserted in the affidavit. There was, thus, no probable cause to issue the search warrant, and the evidence obtained therefrom must be suppressed.

The two motions to dismiss are denied as is the motion to suppress the intercepted telephone conversation. The motion to suppress the evidence seized in the search of Pulgini's home is granted.

IT IS SO ORDERED.