UNITED STATES of America

v.

Donald C. SEIBERT.

Crim. A. No. 91–324.

United States District Court,
E.D. Pennsylvania.

Dec. 6, 1991.

Scott Godshall, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

George H. Newman, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

Prior to trial, the Defendant Donald C. Seibert moved to suppress physical evidence seized and statements made at the time of his arrest. The Government moved to admit certain tape recordings of conversations between the Defendant and a confidential informant. After an evidentiary hearing and oral argument October 25,

1991, in Easton, Pennsylvania, the court made specific findings on the record, denied the Defendant's Motion To Suppress, granted the Government's Motion To Admit Tape Recordings, and denied all other outstanding pre-trial motions as moot.[1] To ensure that the Defendant's rights are fully protected, we issue this memorandum supplementing our prior rulings.

## FACTUAL BACKGROUND

On April 25, 1990 and May 29, 1990, narcotics agents, for the Lancaster County Task Force, arranged for a confidential informant to purchase methamphetamine from a Donnie Seibert living at 162A R.D. # 3 Klinesville Road, Columbia, Pennsylvania. On each occasion, the informant voluntarily agreed to wear a wire so that the transactions could be recorded. Agents subsequently tested the substances purchased by the informant, and in each case, the substances proved to be methamphetamine.

Based on this evidence, a grand jury returned a five count indictment against the Defendant Donald Seibert charging the Defendant with two counts of distributing methamphetamine, 21 U.S.C. § 841(a)(1); two counts of possessing methamphetamine with the intent to distribute, 21 U.S.C. § 841(a)(1); one count of possessing a firearm as a convicted felon, 18 U.S.C. § 922(g)(1); and one count of using a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1).

On August 7, 1991, the Defendant was arrested at his trailer-home, located at 162A R.D. # 3 Klinesville Road, Columbia, Pennsylvania, pursuant to a valid arrest warrant. At the time of arrest, officers found the Defendant hiding in the bathroom closet. The Defendant was escorted to the living area where he was handcuffed, frisked for weapons, and read his

*Miranda* warnings. Officers observed a large marijuana pipe and a small ashtray with some marijuana seeds on the coffee table in the middle of the living area.

When asked, pursuant to standard safety procedures, if there were any firearms in the trailer, the Defendant indicated that he had a pistol in the bedroom above the headboard. The Defendant later told officers that he had been given the handgun in order to protect himself from the "Pagans," a motorcycle gang. All testimony indicated that this statement was volunteered and not made in response to any direct police questioning.

Following the Defendant's arrest, Lancaster County issued a search warrant[2] for the Defendant's trailer, pursuant to which officers found various controlled substances and drug-related equipment.

The Defendant has filed a Motion To Suppress the evidence seized and the statements made at the time of his arrest. The Government has filed a Motion To Admit Tape Recordings of conversations between the Defendant and the confidential informant.

## DISCUSSION

### 1. *Motion To Suppress.*

█ The Defendant argues that the facts contained in the "four corners" of the warrant affidavit are insufficient to support a finding of probable cause, thereby making the warrant defective and all evidence seized pursuant to the warrant inadmissable.

It is well established that the "totality of the circumstances" test is the proper standard for determining the existence of probable cause for the issuance of a search warrant. *Massachusetts v. Upton,* 466 U.S. 727, 728, 104 S.Ct. 2085, 2085, 80

---

**1.** At the suppression hearing, the parties agreed not to use the Defendant's alleged alias at trial, and the Defendant acknowledged receipt of all requested discovery. Accordingly, the Defendant's Motion To Strike Alleged Alias and the Defendant's three discovery motions (Motion For Discovery, Motion For Notice Of Intention To Use Evidence, and Motion To Disclose All

Evidence Of Electronic Monitoring) were denied as moot.

**2.** The warrant affidavit recounted the Defendant's April 25, 1990 and May 29, 1990 methamphetamine sales, as well as the Defendant's arrest and the officers' plain view observation of the marijuana pipe and marijuana residue.

L.Ed.2d 721 (1984); *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Under the "totality of the circumstances" test, the issuing magistrate is asked "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the [warrant] affidavit ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. A reviewing court may not undertake a *de novo* determination of probable cause and should determine only whether there is substantial evidence to support the magistrate's decision to issue the warrant. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. The Defendant argues that two isolated drug deals are insufficient to find "a fair probability" that "contraband" would be found in the Defendant's trailer, at the time that the search warrant was actually issued, three months after the alleged transactions. Moreover, the Defendant contends that absent evidence of these two "stale" transactions, the mere presence of a marijuana pipe and marijuana residue are insufficient to support a finding that there was probable cause to believe that the Defendant possessed methamphetamine or other drug related equipment.

■ We disagree. Under the "totality of the circumstances" test, there is adequate information to support the magistrate's finding of probable cause. There is no question, in this case, that the warrant affidavit set forth an ongoing and continuing course of drug dealing—the warrant recounted evidence of repeated sales of methamphetamine at the Defendant's trailer over a three month period, coupled with evidence of ongoing drug activity, as evidenced by the marijuana pipe and residue found at the trailer an hour before the search warrant was submitted. The fact that three months passed between the sales of April 25, 1990 and May 29, 1990 and the issuance of the warrant is irrelevant. *See United States v. Jones*, 801 F.2d 304, 314 (8th Cir.1986); *United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir.1973). Where an activity is of a protracted and continuous nature, the question of staleness depends more on the nature of the unlawful activity than the dates and times of the activity. *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir.), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984) (quoting *United States v. Forsythe*, 560 F.2d 1127, 1132 (3d Cir.1977) and *Harris*, 482 F.2d at 119). Given the two transactions with the informant and the presence of the marijuana pipe, there was no reason for the magistrate to believe that the Defendant's drug deals had ceased. Accordingly, we find that the information contained in the "four corners" of the warrant affidavit provided a sufficient basis for the magistrate to believe that controlled substances and drug-related equipment would be found at the Defendant's trailer.[3]

■ The Defendant also argues that his statements concerning the handgun should be suppressed because the statements were involuntary and obtained in violation of *Miranda*. Having read the Defendant his *Miranda* warnings, police asked the Defendant if he had any firearms in the trailer. In response the Defendant stated that he had a handgun in the bedroom behind the headboard. Sometime later, the Defendant stated that the handgun had been given to him so that he could protect himself from the "Pagans," a motorcycle gang.

It is well established that, for purposes of protecting public safety, police officers may question suspects about firearms believed to be in the arresting area without violating *Miranda*. *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). Moreover, given the lapse of time and the nonresponsive character of the Defendant's later statement, we find the Defendant's statement to be an uninvited and spontaneous utterance on which *Miranda* has no bearing. *Miranda* has no application to statements, such as this, that are

---

**3.** Moreover, the Government established a rational basis for the delay in issuing the warrant. The laboratories responsible for testing the substances purchased by the informant were backlogged. By the time the results came back, the Government was in the midst of using the informant on another investigation and could not afford to expose the informant's identity.

voluntarily offered and are not a product of either express questioning or any police practice reasonably likely to evoke an incriminating response. *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966); *see also Cannady v. Dugger,* 931 F.2d 752, 754 (11th Cir.1991); *United States v. Griffin,* 922 F.2d 1343, 1357 (8th Cir.1990). Accordingly, the Defendant's statements can be properly received into evidence, and the Defendant's Motion to Suppress these statements must be denied.[4]

### 2. *Motion To Admit Tape Recordings.*

 The Government moved to admit tape recordings of certain conversations between the Defendant and the confidential informant pursuant to 18 U.S.C. § 2511(2)(c).[5] The warrantless recording of a conversation with the consent of one of the parties may be admitted into evidence in a federal prosecution, *United States v. Armocida,* 515 F.2d 49, 52 n. 11 (3d Cir.), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975), provided that the Government introduce clear and convincing evidence of the authenticity and accuracy of the recording. *United States v. Starks,* 515 F.2d 112, 121 (3d Cir.1975).[6] At the suppression hearing, the Defendant did not challenge the authenticity and accuracy of the recordings, but rather asked only that the Government prove the audibility of the tapes and the accuracy of the transcripts. The Defendant argued that sections of the tapes were inaudible, due to background music and automobile engines, thereby making the transcripts inaccurate in places.

After listening to the tapes, in particular the ten lines challenged by the Defendant, we found the tapes to be audible and the transcripts accurate.[7] Accordingly, we granted the Government's motion to admit the tape recordings, noting that, in the case of a discrepancy, the jury would be instructed to be guided by what they heard rather than what they read.

### CONCLUSION

Upon careful consideration of the testimony presented and counsels' arguments, we deny Donald Seibert's Motion to Suppress the evidence seized and statements made at the time of his arrest, and we grant the Government's Motion to admit tape recordings of certain conversations between Donald Seibert and a confidential informant. All other pre-trial motions are denied as moot.

---

**4.** The parties agreed not to mention the motorcycle gang in the testimony concerning the Defendant's handgun. Testimony would be limited to general statements that the gun was given to the Defendant for protection.

**5.** The Government sought to admit four tapes, one from April 10, 1990, two from April 25, 1990, and one from May 29, 1990.

**6.** *Starks* held that the Government must establish the following facts:
(1) The recording device was capable of recording the conversation;
(2) The operator was competent to operate the device;
(3) The recording is authentic and correct;
(4) No changes in, additions to, or deletions have been made to the tape recordings;

(5) The tape recordings have been properly preserved;
(6) The speakers on the tape recordings are properly identified; and
(7) The party consenting to the conversation freely and voluntarily provided consent.
*United States v. Starks,* 515 F.2d 112, 121 n. 11 (3d Cir.1975).

**7.** The transcripts were made by Special Agent Kathy Barton of the Reading Office of the Bureau of Alcohol, Tobacco, and Firearms. Every attempt was made to make the tapes as accurate as possible. Agent Barton used a sophisticated recording device so that obscure passages could be heard more slowly and repeatedly, and where she could not understand the recording precisely, the passage was transcribed as "unintelligible."