OPINION
Anthony Jones appeals from a judgment of the Miami County Court of Common Pleas, which found him guilty of numerous drug-related offenses after overruling his motion to suppress and his motion to withdraw a plea of no contest to numerous offenses.
On September 7, 1999, Jones was indicted on forty drug-related offenses, including engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), trafficking in drugs in violation of R.C. 2925.03(A), and possession of drugs in violation of R.C. 2925.11(A). Jones pled not guilty to the offenses and filed a motion to suppress the evidence obtained during a search of his apartment pursuant to a search warrant. The trial court conducted a hearing on the motion to suppress in January 2000 and thereafter overruled the motion. On April 5, 2000, Jones entered into a plea agreement with the state whereby he pled no contest to one count of engaging in corrupt activity, seven counts of trafficking in drugs, and ten counts of possession of drugs. As part of the plea agreement, the state dropped the remaining counts in the indictment, the state and the sheriff's office issued a joint recommendation of a five year sentence, Jones' Jeep was returned to his mother, and Jones agreed to cooperate with the state regarding other pending prosecutions.
One week after entering his plea and before sentencing, Jones filed a motion to withdraw his no contest plea and to proceed to trial. The trial court conducted a hearing on Jones' motion on May 8, 2000. On May 10, 2000, the trial court filed a lengthy decision in which it concluded that there was "no reasonable, legitimate basis" to permit the withdrawal of Jones' no contest plea.
The parties filed a joint stipulation that a number of the counts to which Jones' had pled no contest were allied offenses of similar import that should be merged at sentencing and, accordingly, he was sentenced on only ten counts. On June 6, 2000, the court sentenced Jones as follows: eight years of imprisonment for engaging in corrupt activity; a total of ten and one-half years on six counts of trafficking in drugs; and a total of twenty-seven months on three counts of possession of drugs. The court ordered that the trafficking and possession sentences run concurrently with one another and with the corrupt activity sentence.
Jones was represented by five different attorneys during the course of the trial court proceedings due to personality differences and disagreements about strategy. Jones' appellate attorney raises two assignments of error on appeal. Jones has also filed a Supplemental Pro Se Brief in which he raises one assignment of error. We will begin with the assignments of error presented by Jones' attorney.
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO WITHDRAW HIS PLEA OF NO CONTEST.
Jones claims that he was coerced into entering a no contest plea because his attorney had screamed at him while discussing the plea agreement.
A motion to withdraw a guilty or no contest plea should be granted only to correct a manifest injustice if made after sentencing, but may be granted more freely if made before sentencing. Crim.R. 32.1; State v. Xie (1992), 62 Ohio St.3d 521, 526. Despite the more lenient standard applicable to pre-sentence motions, however, a defendant does not have an absolute right to withdraw a plea prior to sentencing. Id. at paragraph one of the syllabus. Even though motions to withdraw pleas prior to sentencing "are to be freely allowed and treated with liberality, * * * [i]t is within the sound discretion of the trial court to determine what circumstances justify granting such a motion." State v. Peterseim (1980), 68 Ohio App.2d 211, 213-214. Unless it is shown that the trial court acted unjustly or unfairly, there is no abuse of discretion in denying a motion to withdraw a plea prior to sentencing, and the trial court's decision will not be reversed on appeal. Id. Factors to be considered in determining whether the trial court abused its discretion in overruling a motion to withdraw a plea include: 1) the competence of defense counsel; 2) the thoroughness of the hearing pursuant to Crim.R. 11 conducted before the plea was entered; 3) the thoroughness of the hearing on the motion to withdraw; and 4) the court's full and fair consideration to the motion to withdraw the plea. Id.; State v. Posta (1988), 37 Ohio App.3d 144, 145.
In considering Jones' motion to withdraw his plea, the trial court held a hearing at which Jones, the attorney who had represented him at the time of the plea agreement, Frank Patrizio, and two corrections officers from the jail had testified. Jones claimed that, during a meeting with Patrizio at the jail on March 31, 2000, Patrizio had been "belligerent and pushy, demanding" and "hostile" in their discussions about a plea agreement that had been offered by the state. According to Jones, Patrizio had characterized his case as "bullshit" and had assured Jones that, as a black man, he would not get a fair trial and could do no better than the deal that was being offered. The corrections officers corroborated Jones' story to the extent that they testified to having overheard a heated exchange between Jones and Patrizio during which Patrizio had been yelling at Jones. Jones admitted that he had been actively involved in his case from the beginning and that he had successfully asked to have several attorneys removed from his case when it was not being handled in a way that satisfied him.
Patrizio admitted that he had yelled at Jones while discussing a plea agreement because he had felt that Jones was smug and did not recognize the seriousness of his situation or give the offer the consideration that it deserved. Patrizio denied, however, that he had made any comments regarding Jones' race or called him any names. Patrizio and one of the corrections officers each testified that Patrizio had indicated to Jones as he left the meeting room that he would not see Jones again. Both corrections officers testified that Jones did not seem upset a short time later when he was escorted back to his cell. Patrizio testified that he had met with Jones several times over the next few days, however, and he described those meetings as much more cordial. It was at these meetings that the terms of the plea agreement were settled.
The trial court also considered the record of the hearing at which Jones had changed his plea from not guilty to no contest. Jones was questioned at length at this hearing about his understanding of the agreement and the voluntariness of his plea. The colloquy complied with the requirements of Crim.R. 11(C). Although Jones had been crying at the hearing, he had repeatedly indicated that he understood the nature and consequences of his plea.
In ruling on Jones' motion to withdraw his plea, the trial court found that Jones had seemed very credible at the plea hearing and had not been credible at the hearing on his motion to withdraw his plea when he testified that his plea had been coerced. The court also concluded that Patrizio had been credible at the hearing on the motion to withdraw the plea and that Patrizio was a highly competent, experienced attorney who had adequately represented Jones during his tenure as Jones' attorney. The court credited Patrizio's testimony that there had been cooperative meetings with Jones between the time of their confrontation and the time the plea agreement was entered, that Patrizio had apologized to Jones on one of these occasions, and that the specifics of the plea agreement and Jones' various options had been discussed. For these reasons, the court concluded that Jones had "simply had a change of heart" and that there was "no reasonable, legitimate basis to withdraw [Jones'] plea of no contest."
After a thorough review of the record, we cannot conclude that the trial court abused its discretion in overruling Jones' motion to withdraw his plea. The court reviewed the record of the proceedings, conducted a thorough hearing, and weighed the evidence presented before concluding that Jones should not be permitted to withdraw his plea. Indeed, it appears from the record that Jones was very knowledgeable about his case and had no trouble standing up for himself when he was dissatisfied with his attorney's conduct. Thus, we cannot conclude that the trial court abused its discretion when it found that Jones' testimony about the voluntariness of his plea had been more credible at the time the plea was entered than at the hearing on the motion to withdraw the plea and that he should not be permitted to withdraw his plea.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
Jones claims that the evidence obtained from the search of his residence should have been suppressed because the warrant had been based upon "false and misleading testimony" from a detective, without which there would have been insufficient evidence to obtain a warrant.
Detective Steve Lord of the Miami County Sheriff's Office filed an affidavit in support of the search warrant which contained the following averments. On three separate dates — May 14, May 21, and May 26, 1999 — the Miami County Sheriff's Department, through a confidential informant known as CI-399, purchased "under one gram of crack cocaine" from Jones as part of an ongoing investigation into the importation and distribution of controlled substances. In July 1999, the Sheriff's Office obtained Jones' address from Wright Patt Credit Union bank records and from automobile registration records. Both records indicated that Jones' address was 302 Lincoln in Troy, Ohio. The affidavit also stated that, based on Detective Lord's experience, drug traffickers keep on hand large amounts of currency in order to maintain and finance their ongoing narcotics business, they maintain records of their dealings, and they frequently keep contraband, currency, and other records at their residences "for their ready access and to conceal [these items] from law enforcement authorities." The affidavit indicated that weapons, drug paraphernalia, and information about drug traffickers' associates were also likely to be found at their residences. Based on this evidence, Detective Lord requested a warrant to search Jones' residence for records relating to the sale of controlled substances, U.S. currency, photographs of co-conspirators, firearms, crack cocaine, and drug paraphernalia.
The judge who issued the warrant conducted a hearing on the application for a search warrant. A partial transcript of this hearing was introduced at the hearing on the motion to suppress. At the hearing on the warrant, Detective Lord testified that, in addition to the other sales, $100 worth of crack cocaine had been purchased from Jones on July 15, 1999 through "the use of confidential informants" and that, on August 2, 1999, a Special Agent of the Bureau of Criminal Identification and Investigation ("BCII"), who was accompanied by the confidential informant, had purchased one ounce of crack cocaine from Jones. According to Detective Lord, these purchases and the prior ones had been recorded and monitored by the sheriff's office. Detective Lord testified at the warrant hearing that he had used "those confidential informants" in the past and that the information provided by them had been reliable. Detective Lord also testified that he had monitored a call from Anthony Jones to his girlfriend on August 11, 1999, during which Jones, who was in jail, had asked her to count the money in his room, and that Jones' girlfriend had counted out $2,500 in cash during this conversation.
The judge signed the warrant on August 12, 1999, the day of the hearing.
Jones claims that probable cause for issuance of the warrant was lacking because Lord's affidavit did not indicate the veracity of the confidential informant, erroneously indicated that there had been more than one confidential informant, and did not indicate where the drug sales had occurred, and because of the length of time between the alleged drug sales and the issuance of the warrant.
Magistrates and judges who issue search warrants are required to consider the totality of the circumstances in determining whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates (1983), 462 U.S. 213, 238,103 S.Ct. 2317, 2332; State v. George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus; State v. Brown (1995), 101 Ohio App.3d 227,229. In reviewing a magistrate's or judge's determination that probable cause existed to justify the issuance of a search warrant, the reviewing court must determine whether the evidence offered in support of the warrant provided a substantial basis for the conclusion that evidence of a crime would be found at the place to be searched. George, 45 Ohio St.3d at paragraph one of the syllabus. Neither a trial court nor an appellate court should substitute its judgment for that of the issuing magistrate or judge by reviewing the evidence de novo. Id., paragraph two of the syllabus. Rather, the duty of a reviewing court "is simply to ensure that the magistrate or judge had a substantial basis for concluding that probable cause existed," and the court should accord great deference to the issuing authority's determination of probable cause. Id.
We now turn to the reasonableness of the issuing judge's conclusion that there was probable cause to issue a search warrant for Jones' residence. Although Detective Lord did at times use the phrase "confidential informants" during his testimony at the hearing on the warrant, it was clear from the evidence, viewed as a whole, that there was only one confidential informant, CI-399, who was cooperating with the police in making drug buys from Jones, and that there was one agent of the BCII who also participated in one of these buys. Detective Lord testified that some people would classify a BCII agent as an informant. It was also clear that the confidential informant's information had been verified through the use of transmitters and corroboration with other evidence. Detective Lord's testimony that the confidential informant had proven reliable "in the past" did not necessarily suggest that the informant had been used in other cases, as Jones suggests. Detective Lord also did not suggest that the buyers had reported sales of drugs out of Jones' house, directly. It was apparent that the reason for obtaining a search warrant for Jones' house was not based on the fact that any drug transactions had occurred on the premises but rather on the probability that, if he was dealing in drugs, evidence of such activity would be found at his home. Thus, we disagree with Jones' view that the evidence in the affidavit was misleading or false.
Jones also claims that the information contained in Detective Lord's affidavit was stale by the time he sought the search warrant and therefore did not create probable cause to believe that evidence of illegal activity would be found at Jones' apartment. The affidavit detailed drug buys in May 1999, and the warrant was obtained in August 1999. Viewing the affidavit in conjunction with the testimony presented at the hearing on the search warrant, however, it is clear that the sheriff's office had information about drug deals that had occurred in July and August as well as in May. We have held that "[w]here the information contained in an affidavit `justifies a conclusion * * * that this is more than an isolated incident, but, in fact, a series of events * * * the importance of time lapse pales.'" State v. Kirby (Sept. 27, 1995), Montgomery App. No. 14971, unreported, citing State v. Prince (1977), 52 Ohio Misc. 93, 97 and United States v. Harris (C.A.3, 1973),482 F.2d 1115, 1119. Besides Jones' factual mischaracterization of when the events upon which the warrant was based had occurred, the state did present evidence at the hearing on the application for a warrant of a pattern of conduct which continued up to the time that the warrant was sought such that the lapse of time was less important in determining whether evidence of a crime was likely to be found at the residence. The trial court did not act unreasonably in relying, at least in part, on events which had occurred in May 1999 in granting the search warrant in August 1999.
Because it appears to us that the judge who issued the search warrant had a substantial basis upon which to conclude that there was a reasonable probability of finding evidence of a crime at Jones' residence, the trial court did not err in overruling Jones' motion to suppress.
The second assignment of error is overruled.
In the assignment of error raised in Jones' pro se supplemental brief, he contends that he should have been allowed to withdraw his plea because the state had not abided by the terms of the plea agreement. It is not clear in what way Jones believes that the state did not abide by the agreement. The state agreed to recommend a sentence of five years if Jones testified against his co-defendants and to recommend six years if Jones did not so testify. Jones agreed to testify against his co-defendants. By the time of the sentencing hearing, however, Jones had refused to testify against two of the three co-defendants. The state acknowledged, however, that at that point, it would have to abide by the five year recommendation or allow the agreement to be nullified altogether through the withdrawal of Jones' plea. The state indicated that it preferred to be bound by recommending a five year sentence than to allow Jones to withdraw his plea. Thus, the state recommended a five year sentence pursuant to the plea agreement despite Jones' refusal to cooperate with other prosecutions. We do not see how the state failed to comply with the terms of the agreement, as Jones claims. If anything, Jones got more than that for which he had bargained.
We are unpersuaded by Jones' assertion that his case is analogous to State v. Walton (1981), 2 Ohio App.3d 117. In Walton, the defendant had entered into a plea agreement whereby he would testify against his brother in exchange for the state's recommendation of a four year sentence for involuntary manslaughter and the dismissal of other charges, and the trial court had "expressly indicated acceptance of the recommendation" conditioned upon Walton's testimony in his brother's case. Id. at 118. When Walton had a change of heart about testifying against his brother, the trial court not only refused to allow him to withdraw his plea, but it also imposed a longer sentence than had been provided for in the plea agreement "in retaliation." The Tenth District Court of Appeals held that the trial court had abused its discretion "in both overruling the motion to withdraw and refusing to abide by the state's obligations under the plea bargain." Id. at 119. In other words, the Tenth District concluded that the trial court could have refused, within its discretion, to allow the withdrawal of the plea if it had enforced the state's obligations under the plea bargain, or it could have freed both the defendant and the state of the obligations imposed by the plea bargain. Id. It had not been permitted, however, to "create a new plea-bargain agreement by overruling a motion to withdraw a guilty plea." Id. In Jones' case, the trial court acted in conformity with the Tenth District's opinion: when it refused to allow Jones to withdraw his plea, it held the state, at the state's request, to the terms of the plea agreement notwithstanding Jones' failure to comply with some of its terms. Thus, Walton does not support Jones' position that the trial court erred.
As a final matter, we observe that Jones' argument regarding the state's non-compliance with its part of the plea agreement may be based on the fact that the trial court did not impose the five year sentence recommended by the state, but rather imposed a longer sentence. We note that the sentence to be imposed was not part of the agreement in this case, as it apparently was in Walton, and that Jones was informed at the sentencing hearing that the court would not be bound by the state's recommendation.
Jones' pro se assignment of error is overruled.
The judgment of the trial court will be affirmed.
 ________________ WOLFF, P. J.
FAIN, J. and GRADY, J., concur.